UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-135-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JACKSON WHOLESALE COMPANY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

In November 2012, Randy Dixon ("Dixon") admitted to Daniel McIntyre ("McIntyre"), the owner of Defendant Jackson Wholesale Company ("Jackson Wholesale"), that he had been stealing from the company. More specifically, Dixon acknowledged that, in his capacity as a sales employee, he had collected payments from various customers exceeding $200,000 but had not remitted the payments to the company. And this was not the first time that Dixon had stolen from the company. Dixon had engaged in a similar scheme in 2010. However, due to his friendship with McIntyre, Dixon was allowed to keep his job and make repayments of the stolen money. Nothing was reported to Jackson's insurance company at that time. But when McIntyre discovered that Dixon was committing additional thefts in 2012, he sought to collect under the commercial insurance policy issued by Plaintiff Westerfield Insurance Company ("Westerfield") in April of that year.

Westerfield filed this action seeking a declaration of rights under the policy. [Record No. 1] It contends that, based on McIntyre's knowledge of Dixon's early theft, the current claim is

-1-

excluded under clear language of the policy. Both parties have now filed motions for summary judgment regarding this issue. [Record Nos. 14, 16] After reviewing the relevant materials, the Court agrees that Westfield has no liability to Jackson under the unambiguous terms of the insurance contract. As a result, its motion for summary judgement will be granted.

**I.**

The relevant facts are not disputed. During 2010, McIntyre discovered that Dixon had taken money without permission from Jackson. Although McIntyre explained that the proceeds had been used to assist Dixon's family members, he has acknowledged that the transaction was not a loan. However, due to a friendship between the two, Dixon was allowed to pay at least a portion of the money back over the next two years. [Record No. 15-1, pp. 78-80] During an examination under oath conducted by Westerfield, McIntyre chose to describe Dixon's actions as "misappropriations" rather than "thefts".[1]

The insurance policy that is the subject of this dispute is attached to Westerfield's Complaint as Exhibit A. [Record No. 1-1, pp. 1-308] The policy was issued after the above-referenced theft was discovered and covers the period April 1, 2012 to April 1, 2013. [*Id.*, p. 305] Jackson does not claim that it advised Westerfield or the agent responsible for issuing the policy of the prior theft(s) by Dixon.

The policy has the following relevant provisions pertaining to employee theft:

**COMMERCIAL CRIME COVERAGE FORM** . . .

**1. Employee Theft**

---

[1] This characterization results in a "Catch-22" for Jackson. If Dixon's 2010 actions were not "thefts", then neither were his actions in 2012. McIntyre concedes Dixon's actions were identical during both periods.

> We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

[*Id.*, p. 243] "Theft", as used in the policy is defined as "the unlawful taking of property to the deprivation of the insured." [*Id.*, p. 256] The policy excludes coverage for acts committed by owners of the company as well as acts of certain employees. The relevant provision of the contract specifically states:

> **D. Exclusions**
>
> > **1.** This insurance does not cover: . . .
>
> **b. Acts of Employees Learned Of By You Prior To The Policy Period**
> Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

[*Id.*, p. 244][2]

At some point in November 2012, Jackson discovered that Dixon was again collecting payments for products sold to various stores but not remitting the proceeds to the company. Dixon admitted his conduct to McIntyre on November 29, 2012. Thereafter, McIntyre submitted a Property Loss Notice to the issuing agent. [Record No. 1-2] In relevant part, the notice states that:

> Dixon, Randy – employee was a salesman and was in charge of collecting payments for products sold, employee taking money from the collections in excess of $200,000 – insured assigned another employee to check out the territory to see what was going on – employee found out and went in on Thursday 11/29

---

[2] The term "employee" is defined in the policy. [Id., p. 254-255] However, the parties agree that Dixon was an employee of Jackson at all times relevant to this action.

>   to meet with the owner Dan MacIntrye [sic] – he admitted to the theft – insured
>   in the process of pressing charges and beginning an investigation –

[*Id.*, p. 1-3]   The Proof of Loss subsequently submitted on Jackson's behalf on or about February 11, 2013, claimed the amount of loss to be $255,855.94.  Again, McIntyre described the manner in which the loss occurred as, "salesman was taking money from clients and not paying the company." [*Id.*]  McIntyre did not disclose the earlier thefts by Dixon at the time he submitted the Property Loss Notice or the Proof of Loss.  Instead, in the Proof of Loss, he stated that Jackson "had not previously determined that the employee had committed theft from the company until November 28, 2012.[3]   However, McIntyre's knowledge of earlier thefts was confirmed by Westfield McIntyre's sworn examination conducted on May 1, 2013.

## II.

Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party.  That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

---

[3]   Under the undisputed facts, Jackson's argument that Dixon's theft should be treated as a single occurrence is clearly misplaced.  However, if the Court were to construe Dixon's actions as a "single occurrence, McIntyre's sworn proof of loss would contain a material misrepresentation regarding the date the theft was discovered.

A party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must present "significant probative evidence" of a genuine dispute . . . to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424. The nonmoving party cannot rely upon the assertions in its pleadings; rather, it must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

Here, the material facts are not disputed. While Jackson attempts to characterization Dixon's actions in 2010 as something other than "theft"as that term is defined under the policy, its characterization is misplaced. *E. Udolf, Inc. v. Aetna Casualty and Surety Co.*, 573 A.2d 1211, 1215 (Conn. 1990). In addition to meeting the clear definition of theft, Dixon's actions would also constitute "dishonest acts" under the insurance policy. There is no ambiguity. Dixon stole from Jackson in 2010 and in 2012. For purposes of the present insurance claim, it is of no consequence that the company did not pursue legal action against Dixon when his wrongful acts were discovered in 2010. The company's knowledge of these prior acts prevents Jackson from recovering for the acts of theft committed in 2012. As the plaintiff points out in its response to the defendant's motion, the undisputed facts clearly distinguish this case from the cases cited by

Jackson. In those cases, the employee's theft was only discovered at the end of the period of embezzlement. *See Glaser v. Hartford Casualty Insurance Co.*, 364 F.Supp.2d 529 (D.Md. 2005); and *Wausau Business Insurance Co. v. U.S. Motels Management, Inc.*, 341 F.Supp.2d 1180 (D.Colo. 2004).

In summary, as noted previously, the relevant terms of the governing insurance contract are not ambiguous. Therefore the insurance contract will be enforced according to its terms. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). An employee of the insured committed acts of theft and dishonesty in 2010 by taking company money and using it for his own benefit. The employee was caught and attempted to repay all or part of the stolen funds to the employer. Thereafter, the company entered into an insurance contract with Westfield which provided coverage against acts of theft or dishonesty. However, the theft discovered in 2012 is subject to a clear policy exclusion because Jackson had knowledge of similar acts of theft and dishonesty.

### III.

For the reasons discussed above, it is hereby

**ORDERED** as follows:

1. Plaintiff Westfield Insurance Company's Motion for Summary Judgment [Record No. 14] is **GRANTED**.

2. Defendant Jackson Wholesale Company's Motion for Summary Judgment [Record No. 16] is **DENIED**.

3. Judgment will be entered this date granting the relief requested in the Complaint for a Declaration of Rights filed by Plaintiff Westfield Insurance Company.

4. All issues raised by the parties having been resolved, this action is **DISMISSED** and **STRICKEN** from the Court's docket.

This 9th day of January, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge